GRIFFIN v. CHALMETTE LAUNDRY & DRY CLEANING COMPANY, LTD.

———

(April 23, 1928. Opinion and Decree.)

———

*(Syllabus by the Court)*

1. **Louisiana Digest—Appeal—Par. 625, 626.**

The conclusions of the trial judge upon issues which involve only the facts of the case and veracity of one witness as against another, will not be disturbed on appeal.

Item Co. vs. Hereford, 1 La. App. 288.

2. **Louisiana Digest — Automobiles — Par. 4 (b).**

Where two automobiles approach an intersection at a right angle and one of them nearly completes the crossing before the other arrives at the intersection, the one which almost traverses the intersecting street is entitled to proceed, notwithstanding the fact that the other car had the right of way.

Vance vs. Poree, 5 La. App. 109.

3. **Louisiana Digest — Automobiles — Par. 4 (b).**

Where two automobiles approach each other at a right angle on intersecting streets and one of them enters the intersection some time before the other, it is entitled to proceed notwithstanding the other car has right-of-way.

Hirsch vs. Ashford, 5 La. App. 290.

Appeal from Division "E," Civil District Court. Hon. Wm. H. Byrnes, Jr., Judge.

Action by James Griffin against Chalmette Laundry & Dry Cleaning Company, Ltd.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

H. W. Robinson, of New Orleans, attorney for plaintiff, appellant.

Frank Doyle, of New Orleans, attorney for defendant, appellee.

JONES, J. This is a suit for Twelve thousand, five hundred ($12,500.00) dollars, damages for personal injuries arising out of an accident which occurred at the corner of Esplanade Avenue and Galvez Street in this city, on February 14, 1925, about 4:10 p. m.

Plaintiff alleges as follows:

The driver of defendant's truck, which was coming up Galvez Street toward Canal Street, failed to stop before entering the intersection as required by City Traffic Ordinance and negligently drove into the right rear side of plaintiff's Marmon car, jamming it against a telephone post on the neutral ground; the Marmon was practically destroyed and he was hurled to the pavement, sustaining various bodily injuries.

Defendant denied plaintiff's allegations as to negligence and pleaded contributory negligence.

The trial judge after a thorough analysis of the evidence found both drivers guilty of negligence, which continued up to the very moment and dismissed the suit.

Plaintiff has appealed.

Griffin, the plaintiff, who was driving a Marmon sedan for Monteleone, in the livery business, was going out Esplanade Avenue to the Fair Grounds Race Track to "get a load."

He testified in part as follows:

He was working on a salary and commission; the last race on that day went to the post about half past four o'clock p. m.; to be certain of getting a load it was necessary for him to reach the race track early; he was driving a heavy high-powered automobile about twenty miles an hour; when he reached the intersection of Galvez Street, a white laundry truck belonging to the defendant, attempted to cross the lower roadway of Esplanade Avenue at his fastest speed about fifteen miles per hour, but he did not see it until he was within fifteen feet of it, about to enter the intersection; the truck struck the right-hand rear of the Marmon and jammed it up against a telegraph post on the neutral ground; he did not slow down for passengers to get off the street car and didn't know whether any got off or not; truck driver didn't stop and didn't look, was watching some change in his hand; he was thrown out of left door, had two front teeth broken, the tip end of his nose cut off and his knees skinned, truck was turned partly around by the blow and was facing up Galvez Street at a forty-five degree angle toward lake; Marmon, after accident, was facing like the truck, but further in Esplanade Avenue and nearer the telephone post, front end of Marmon was not injured; pulled his machine to the left as far as he could, without going on neutral ground; he was practically over the intersection when truck struck him and left white marks on rear and door, you can't see through the iron fence surrounding the house on the downtown river corner of Esplanade Avenue and Galvez Street, if you approach the intersection as he did.

Just before he left the stand he testified as follows:

"Q. And you did not see the truck until it was out in the intersection?

"A. No, I did not see the truck until I saw him going in there. I was in the intersection when he came out—when he came right on out of Galvez Street.

"Q. When you collided with the truck, did not the front of the truck scrape along the side of the Marmon?

"A. I think it did, after he hit me. My car was going this way, and he was going that way (indicating), and naturally, it scraped.

"Q. It scraped along the right hand side?

"A. Yes, sir."

To support this theory, plaintiff presented two witnesses; one by the name of "Spears," who was a chauffeur for the Checker Cab Co., Inc., and a friend of Griffin, a Mrs. Orsini:

Spears testified in part as follows (Transcript, page 22):

"Q. How far was the Marmon from the intersection at the time you saw the truck?

"A. In front of me?

"Q. No. How far from the corner of Galvez was the Marmon at the time you saw the truck come up?

"A. Well, at the time I saw the truck—oh, how far was the Marmon ahead of me?

"Q. How far was the Marmon from the corner at that time?

"A. I would say about ten or fifteen feet.

"Q. You testified, I believe, that, going out Esplanade, the Marmon was going at a speed of between fifteen and twenty miles an hour. Is that correct?

"A. Absolutely.

"Q. Then, as he approached the corner of Galvez, he slowed down?

"A. Absolutely.

"Q. On account of a car putting off passengers at that corner?

"A. Absolutely.

"Q. About what speed did he slow down to?

"A. I would say about ten miles.

"Q. Was he going about ten miles an hour at the time of the collision?

"A. Absolutely.

"Q. By 'absolutely' you mean 'yes'?

"A. It must be."

Here the trial judge admonished Spears to take the matter seriously.

Later he says, after accident back and front left wheels of Marmon were on neutral ground, when impact occurred he turned quickly into Galvez Street to avoid hitting truck; Griffin came out of right front door; saw him get up and left.

The other witness for plaintiff, Mrs. Orsini, testified that she was standing in her gate on Milne Street. Milne Street is not a continuation of Galvez. It cuts into Esplanade from the uptown side to the right of Galvez Street and the two streets, Galvez and Milne, form a triangle on the upper side of Esplanade Avenue, on which triangle there is erected an engine house. The witness' home fronts on Barracks Street, but she was standing in her rear gate on Milne Street at the time of the accident about in the middle of the block, between Esplanade and Barracks, the next street above Esplanade toward Canal Street. Although she had no reason to do so, she says she kept her eyes contantly on this truck and also the Marmon until the collision. She could not give any information with reference to the street cars or passengers, but she gave minute details with regard to the movements of the laundry truck which did not stop at the intersection, though the Marmon was coming slowly.

Jas. J. Donelon testified that the block between Galvez and Johnson, the next street on Esplanade toward the river, was three hundred twenty feet, that the lower road-way of Esplanade up to curb of neutral ground was thirty-six feet and from neutral ground curb to car track nine feet more.

As there are two car tracks in the neutral ground and the upper road-way is equally as wide as the lower and Mrs.

Orsini was in the middle of the block between Esplanade on Milne Street, she must have been at least one hundred seventy-five feet away in a slightly diagonal direction from the scene.

Azcona, defendant's truck driver, testified as follows:

He stopped at the intersection of Esplanade Avenue and Galvez Street for two reasons: First, because he was required to stop at Esplanade, and secondly, because there was a colored man about to cross the intersection of Galvez Street from the lake to the river. He looked towards the river. As the house on the lower river corner of Galvez and Esplanade Streets sits back in the yard and has around it an iron fence, he could see practically to the next street, that is, Johnson Street; he saw no automobile and proceeded to cross Esplanade at a speed of eight miles per hour, and when he was four or five feet from the neutral ground he was struck by the Marmon machine and turned completely around, so that his truck was facing downtown, that is, facing in the direction from which he had come; the Marmon was turned at an angle towards uptown, that is, facing up Galvez Street towards Canal, a little beyond the intersection; the only damage to his truck was the breaking of the small wooden posts that support the windshield on either side in front of the truck, called "stanchions."

Lewis, a negro who was walking in Esplanade towards the river, testified as follows:

As he reached the intersection of Galvez Street, he saw the laundry truck coming up Galvez Street, the truck came to a complete stop at the intersection; he saw plaintiff's automobile coming at a very high rate of speed out Esplanade.

Hollander, a clerk in the First Precinct Police Station, who lives in the house situated on the lower river corner of Galvez and Esplanade and was summoned by both sides, testified:

"I had just alighted from a Buick coach of my own and walked into the house and I heard the exhaust of an automobile like the muffler was off, making a lot of noise—sh-sh-sh-sh-sh—and I said to my wife, 'Listen to this fellow.' As I turned to the window, I looked out of the window and the car passed like that (indicating rapid movement by gesture of the hands), and two seconds later I heard the crash."

Later he says Marmon was going faster than twenty-five miles per hour.

The record contains several photographs of the damaged Marmon, which show that the entire rear portion of the car was completely wrecked. These confirm the statement of Hollander and are persuasive of the fact that the Marmon was going more than twenty-five miles per hour.

The above analysis of the evidence convinces us that the testimony of Mrs. Orsini and Spear as well as that of Azcona and Lewis is inaccurate and untrustworthy.

Griffin's statement to the effect that he was in the intersection when truck came out and struckk him seems impossible. He was going about twenty miles per hour close to the neutral ground, but the truck couldn't go over twelve, and as the lower roadway of Esplanade is just as wide as Galvez, he would certainly have passed in front of the truck if his story were true.

Plaintiff's able attorney argues that the white marks on the rear door of the Marmon show that the white truck struck it, but we believe that Griffin, the chauffeur of the Marmon, swerved to the left, as he says he did, when he saw he couldn't pass in front of the truck and

that he struck the front of the truck a side blow with his right rear side which threw him up against the telephone post and wrecked his car. This is confirmed by the fact that the truck was turned completely around by the blow and only its front stanchions were broken.

We agree with the trial judge that the truck crossed without stopping, but that it had pre-empted the intersection and plaintiff was guilty of contributory negligence in trying to beat it across.

For above reasons the judgment is affirmed.